192 B.R. 802 (1996)
In re Robert D. MACY, Debtor.
Anna Lowell MACY, Plaintiff,
v.
Robert D. MACY, Defendant.
Bankruptcy No. 94-16965-JNF. Adv. No. 95-1223.
United States Bankruptcy Court, D. Massachusetts.
March 8, 1996.
Edward J. Rozmiarek, Roche, Carens & De Giacomo, Boston, MA, for Plaintiff.
James F. Coffey, Coffey & Shea, Boston, MA, for Defendant.

MEMORANDUM
JOAN N. FEENEY, Bankruptcy Judge.
I. INTRODUCTION
The matter before the Court is a complaint filed by the ex-spouse of the Debtor under 11 *803 U.S.C. §§ 523(a)(5)[1] and (a)(15)[2]. The matter was scheduled for trial on January 23, 1996. However, at the time of trial, the Debtor, Robert D. Macy (the "Debtor") and his ex-spouse, Anna Lowell Macy (the "plaintiff"), agreed "that no issues of fact remain in dispute and that the only issue . . . before the Court is the dischargeability of $33,706.98 in pre-petition attorney's fees and disbursements," which were "incurred by the plaintiff in connection with the plaintiff's efforts to collect alimony, maintenance or child support." Joint Pre-Trial Memorandum, p. 1. The parties also agreed that if the Court determines that the attorneys' fees are "not of the kind described in paragraph 5 [11 U.S.C. § 523(a)(5)]," they are dischargeable as the plaintiff failed to timely file her adversary proceeding under 11 U.S.C. § 523(a)(15) in accordance with the provisions of 11 U.S.C. § 523(c)(1) and Fed.R.Bankr.P. 4007(c)[3].
II. FACTS
The Debtor and the plaintiff were married on July 7, 1979. On August 15, 1990, they executed a Separation Agreement, and, on September 14, 1990, the Probate and Family Court of Dukes County entered a Judgment of Divorce Nisi, which incorporated the Separation Agreement as an order of the court.
In August of 1992, the Debtor filed a complaint in the probate court seeking modification of the alimony, child support and maintenance payments that he was required to make under the Separation Agreement. In October of the same year, the plaintiff filed in the probate court a complaint for contempt against Macy that is still pending.
On October 31, 1994, the Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The plaintiff commenced this adversary proceeding on March 17, 1995, approximately six weeks after the deadline for filing complaints under 11 U.S.C. § 523(a)(15).
On August 23, 1995, at a hearing on the plaintiff's Motion for Summary Judgment, the Court granted the Motion in part, ruling that the Debtor's obligations to make certain payments related to the education of the parties' two children, health and life insurance, child support and alimony were not dischargeable debts pursuant to 11 U.S.C. § 523(a)(5). As a consequence, the only remaining issue pertains to the plaintiff's attorneys' fees.
III. POSITIONS OF THE PARTIES
The plaintiff argues that attorneys' fees and costs are not dischargeable because the debts for which the attorneys' fees were incurred *804 are not dischargeable. The plaintiff cites, among other cases, the following decisions from this district: In re Sinewitz, 166 B.R. 786, 788 (Bankr.D.Mass.1994) ("the classification of ancillary obligations, such as attorneys' fees, should follow the classification of the primary obligation in determining their nature for dischargeability purposes"); In re D'Antuono, 37 B.R. 595, 596 (Bankr. D.Mass.1984) ("`[t]he majority rule among bankruptcy courts is that an obligation to pay attorney's fees is so tied in with the obligation of support as to be in the nature of support or alimony and excepted from discharge'"); In re LaFleur, 11 B.R. 26 (Bankr. D.Mass.1981). See also In re Michaels, 157 B.R. 190, 196 (Bankr.D.Mass.1993) (citing Goldman v. Roderiques, 370 Mass. 435, 437, 349 N.E.2d 335 (1976) for the proposition that legal representation "`is not materially different from those other needs  from subsistence to the education of children  which fall within the more common meaning of alimony or support. . . . '").
The Debtor characterizes his argument as straightforward but novel. He makes a threefold argument citing 1) the avoidance of inequitable results in the construction of section 523(a)(5) by opting for the balancing test set forth in 523(a)(15) for legal fees; 2) the policy favoring debtors' fresh start; and 3) statutory construction principles.
In the first instance, the Debtor maintains that prior to the Bankruptcy Reform Act of 1994, Pub.L. No. 103-394, § 304(e), 108 Stat. 4106, 4133 (1994), the effective date of which was October 22, 1994, courts stretched the meaning of "in the nature of alimony, maintenance, or child support" to include "ancillary debts" such as attorneys' fees in order to prevent dischargeable obligations for which an ex-spouse would be liable from consuming recoveries on debts found to be nondischargeable under section 523(a)(5). In the Debtor's words, "[t]his outcome would certainly result in pyrrhic victories for ex-spouses who succeed in not having their alimony, maintenance, or child support payments discharged only to have to pay their attorneys a significant portion of what was ultimately recovered." Because section 523(a)(15) broadens the relief available to spouses, ex-spouses and children of debtors, the Debtor reasons that courts no longer need to stretch the language of section 523(a)(5), and courts can utilize the balancing test set forth in subsections A and B of section 523(a)(15) to equitably resolve ancillary debts previously characterized as in the nature of alimony, maintenance or support.
Secondly, the Debtor argues that this Court must strictly construe exceptions to discharge in favor of debtors. Should the Court fail to do so, the Debtor argues that the fresh start policy of the Bankruptcy Code  the central tenet of bankruptcy law  would be thwarted.
Finally, the Debtor cites U.S. v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242, 109 S.Ct. 1026, 1030-31, 103 L.Ed.2d 290 (1989), for the proposition that the plain meaning of legislation should be conclusive except in those rare instances when a literal application of the statutory language would produce an absurd result. In the Debtor's view, the characterization of attorneys' fees as section 523(a)(15) debt would not "produce a result demonstrably at odds with the intention of its drafters." Id. at 242, 109 S.Ct. at 1031.
The Debtor also argues that the terms of sections 523(a)(5) and (a)(15) conflict. Accordingly, the Debtor invokes the principle of statutory construction that provides that a later enacted statute generally limits the scope of an earlier statute. See Vimar Seguros Y Reaseguros, S.A. v. M/V Sky Reefer, 29 F.3d 727 (1st Cir.1994). Under this view, the Debtor suggests that if debt no longer meets the plain language requirement of section 523(a)(5), but was incurred in connection with a divorce or separation, it should be characterized as section 523(a)(15) debt.
The plaintiff anticipated the Debtor's arguments in her memorandum and rejected them. She maintains that the Debtor's position would require this Court to ignore a long line of cases construing section 523(a)(5), and is not supported by the legislative history of section 523(a)(15) which demonstrates no congressional intent to affect the dischargeability of attorneys' fees.
*805 IV. DISCUSSION
The Court shall address the Debtor's third argument first. The Court finds that the plain meaning of section 523(a)(5) does not compel the adoption of the Debtor's position. In particular, the Court finds that the language employed by Congress  "in the nature of alimony, maintenance, or support"  demonstrates that Congress contemplated that labels would not be dispositive of what constitutes a nondischargeable obligation. Accordingly, this Court finds that attorneys' fees may be included within the purview of alimony, maintenance or support without running afoul of the plain meaning of section 523(a)(5). In this regard, the Court notes that although what constitutes alimony, maintenance, and support is a question of federal law, the state law characterization is relevant, In re Michaels, 157 B.R. at 193, and Massachusetts has recognized that legal representation is not "materially different" from what is more commonly thought of as alimony, maintenance and support. Id. at 196. Moreover, the Court notes that in view of the legislative history discussed below, the Debtor's interpretation of sections 523(a)(5) and (a)(15) would produce an absurd result in view of the undisputed fact the plaintiff incurred attorneys' fees in connection with her efforts to collect alimony, maintenance and support.
The Debtor's argument with respect to the proper way to construe sections 523(a)(5) and (a)(15) is also unpersuasive. In Shine v. Shine, 802 F.2d 583, 585 (1st Cir. 1986), a case which was not cited by the Debtor, the United States Court of Appeals for the First Circuit indicated that exceptions from discharge for spousal and child support deserve a more liberal construction than the normal, narrow construction advocated by the Debtor. The court noted conflicting established public policies: "the general bankruptcy rule of construing exceptions to discharge against the creditor and in favor of the debtor" and "[t]he long-standing policy of excepting spousal and child support from discharge in bankruptcy [that] supports a more liberal construction." 802 F.2d at 585 (citations omitted).[4] Following an extensive review of the decisional law under both the Bankruptcy Act and the Bankruptcy Code, as well as consideration of the legislative history, the Court of Appeals for the First Circuit reached the following conclusion:
Congressional policy in this area has always been to ensure that genuine support obligations would not be discharged. Interpreting the statute to require the test proposed would violate the principle that in bankruptcy law, `substance will not give way to form . . . technical considerations will not prevent substantial justice from being done.'
Id. at 588 (citations omitted). Other courts have reached the same conclusion. According to the court in In re Kline, 65 F.3d 749 (8th Cir.1995), "`[t]he policy underlying section 523(a)(5) . . . favors enforcement of familial support obligations over a "fresh start" for the debtor.'" Id. at 751 (quoting In re Miller, 55 F.3d 1487, 1489 (10th Cir.1995)).
The Court is persuaded that the judicial interpretations afforded section 523(a)(5) have survived the enactment of the Bankruptcy Reform Act of 1994. As the court in In re Anthony, 190 B.R. 433, 435-36 (Bankr. N.D.Ala.1995), noted, "the legislative history of the section is uncharacteristically clear. . . ." That legislative history provides, in part, the following:
This section is intended to provide greater protection for alimony, maintenance, and support obligations owing to a spouse, former spouse or child of a debtor in bankruptcy. The Committee believes that a debtor should not use the protection of a *806 bankruptcy filing in order to avoid legitimate marital and child support obligations.
140 Cong.Rec.H. 10764 (daily ed. October 4, 1994) (reprinted in Collier on Bankruptcy, Appendix 4) (emphasis supplied).
The Bankruptcy Reform Act of 1994 made substantial changes to the Bankruptcy Code. Notably, Congress added a number of provisions that have had the effect of overruling decisions involving bankruptcy law. For example, the preference liability of non-insider transferees was changed to eliminate the liability of non-insiders for preferential transfers made for the benefit of insiders during the period between 90 days and one year prior to the filing, thereby overruling Levit v. Ingersoll Rand Financial Corp. (In re V.N. DePrizio Constr. Co.), 874 F.2d 1186 (7th Cir.1989). Additional changes were made to the Code that had the effect of overruling First National Fidelity Corp. v. Perry, 945 F.2d 61 (3d Cir.1991), with respect to the curing of mortgage defaults, Rake v. Wade, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993), with respect to the payment of "interest on interest," Hoffman v. Connecticut Department of Income Maintenance, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), with respect to sovereign immunity and making states subject to money judgments, decisions such as In re Town & Country Home Nursing Services, Inc., 963 F.2d 1146 (9th Cir.1992), regarding compulsory counterclaims against states, and, finally, cases such as In re Gonzalez, 149 B.R. 9 (Bankr.D.Mass. 1993), In re Chabot, 992 F.2d 891 (9th Cir. 1993), In re Dixon, 885 F.2d 327 (6th Cir. 1989), and In re Simonson, 758 F.2d 103 (3d Cir.1985), with respect to avoidance of liens that impair exemptions.
The legislative history of the Bankruptcy Reform Act demonstrates that Congress thoroughly and extensively reviewed the Bankruptcy Code and bankruptcy decisions. The history evidences congressional intent to overrule and clarify a significant number of decisions, and further evidences that Congress paid particular attention to consumer bankruptcy issues, including nondischargeability of property settlement agreements. Congress' expressed intention to broaden the relief available to spouses, ex-spouses and children of debtors in section 304 of the Bankruptcy Reform Act of 1994 [11 U.S.C. § 523(a)(15)], coupled with the concomitant absence of any criticism of bankruptcy decisions or any stated intention to affect the extensive and liberal judicial interpretations of section 523(a)(5), persuades this Court that the Debtor's argument, while admittedly creative and well-reasoned, is, upon close analysis, without merit.
Cases are legion that hold that attorneys' fees may be nondischargeable if their payment is found to be "in the nature of alimony, maintenance, or support." Indeed, the Court of Appeals for the Eighth Circuit recently interpreted section 523(a)(5) to permit an attorney to file a complaint under section 523(a)(5), finding that such fees are nondischargeable, even though they are payable directly to the attorney. See In re Kline, 65 F.3d 749 (8th Cir.1995). See also In re Joseph, 16 F.3d 86 (5th Cir.1994); In re Peters, 964 F.2d 166 (2d Cir.1992); In re Williams, 703 F.2d 1055 (8th Cir.1983). But see In re Perlin, 30 F.3d 39 (6th Cir.1994) (finding that an attorney lacked standing to contest the dischargeability of a fee award).
Because the parties do not dispute that the plaintiff incurred the attorneys' fees at issue in connection with the enforcement of alimony, maintenance and support obligations, rather than the enforcement of the terms of a property settlement, this Court finds that the attorneys' fees are "in the nature of alimony, maintenance, or support" and are nondischargeable under section 523(a)(5). In view of the plethora of decisions finding that the payment of attorneys' fees may be in the nature of alimony, maintenance, or support at the time of the enactment of the Bankruptcy Reform Act and the legislative history of section 523(a)(15), which evidences congressional intent to broaden the relief available to spouses, ex-spouses and children of debtors, this Court is convinced that Congress intended to let stand the existing judicial interpretations of section 523(a)(5) with respect to the dischargeability of attorneys' fees. See Martin v. Morello (In re Morello), 185 B.R. 753 (Bankr.E.D.Tenn.1995).
In Morello, the court considered a complaint filed by an attorney who represented *807 the Chapter 7 debtor's ex-spouse in which the attorney sought a determination of the dischargeability of his fee award that was made payable directly to him by the state court. The court stated that "the Bankruptcy Reform Act of 1994 did not alter the widely accepted interpretation of § 523(a)(5) that a debt can be deemed nondischargeable regardless of whether payments will be made directly to the spouse or child." 185 B.R. at 757. This Court agrees with that conclusion. Furthermore, in view of Shine v. Shine, the Court is not convinced that the fresh start policy of the Bankruptcy Code or principles of statutory construction compel a different conclusion.
V. CONCLUSION
Upon consideration of the foregoing, the Court finds that attorneys' fees and expenses in the total sum of $38,706.98 are nondischargeable pursuant to 11 U.S.C. § 523(a)(5).
NOTES
[1] Section 523(a)(5) provides in relevant part the following:

(a) A discharge under section 727 . . . does not discharge an individual debtor from any debt 
(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that  . . .
(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support.
11 U.S.C. § 523(a)(5) (emphasis supplied).
[2] Section 523(a)(15) provides in relevant part the following:

(a) A discharge under section 727 . . . does not discharge an individual debtor from any debt 
(15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless . . . .
11 U.S.C. § 523(a)(15) (emphasis supplied).
[3] Section 523(c)(1) of the Bankruptcy Code provides the following:

Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind specified in paragraph (2), (4), (6), or (15) of subsection (a) of this section, unless on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), (6), or (15), as the case may be, of subsection (a) of this section.
11 U.S.C. § 523(c)(1). Rule 4007(c) mandates that complaints under section 523(a)(2), (4), (6), or (15) must be filed "not later than 60 days following the first date set for the meeting of creditors held pursuant to § 341(a)." Fed. R.Bankr.P. 4007(c).
[4] In support of the latter policy, the court quoted the following language from Wetmore v. Markoe, 196 U.S. 68, 25 S.Ct. 172, 49 L.Ed. 390 (1904):

"The bankruptcy law should receive such an interpretation as will effectuate its beneficient purposes and not make it an instrument to deprive dependent wife and children of the support and maintenance due them from the husband and father, which it has ever been the purpose of the law to enforce. . . . Unless positively required by direct enactment the courts should not presume a design upon the part of Congress in relieving the unfortunate debtor to make the law a means of avoiding enforcement of the obligation, moral and legal, devolved upon the husband to support his wife and to maintain and educate his children."
802 F.2d at 585-86.